# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

<table>
<tr><td>

AMY BLOCK, VICTORYA MANAKIN,<br>
and CRYSTAL HUNTER, on behalf of<br>
themselves and the Putative Class,

Plaintiffs,

v.

JAGUAR LAND ROVER NORTH<br>
AMERICA, LLC,

Defendant.

</td><td>

**Civil Action No. 15-5957 (SRC)**

**OPINION**

</td></tr>
</table>

**CHESLER**, District Judge

      This matter comes before the Court on the motion filed by Defendant Jaguar Land Rover North America ("Defendant" or "JLRNA") for partial dismissal of the Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Amy Block ("Block"), Victorya Manakin ("Manakin"), and Crystal Hunter ("Hunter") (collectively "Plaintiffs") have opposed the motion. The Court has considered the papers filed by the parties and, pursuant to Federal Rule of Civil Procedure 78, will rule on the motion without oral argument. For the reasons expressed below, Defendant's motion will be granted.

# I. BACKGROUND

## A. Facts

This consumer fraud action revolves around Defendant's alleged failure to disclose a defect in the "Infotainment Control Module" (hereinafter "ICM") of Land Rover LR2 vehicles with a model year 2008 through 2015. According to the TAC, the ICM is an option on the vehicles which "controls the vehicle's entertainment, climate, navigation, Bluetooth, satellite radio, and other electronic processes" and "is powered by the LR2's standard car battery." (TAC ¶ 70.) Plaintiffs allege that JLRNA charges a premium for vehicles equipped with the ICM option, "especially those that include a navigation system, satellite radio or Bluetooth." (Id., ¶ 3.) The TAC identifies the alleged defect as follows:

> The Vehicles are designed and manufactured with a uniform and inherent design defect that causes the ICM to not properly shut down, which results in the ICM continuing to operate after the vehicle's engine has been shut off, thereby draining the battery. Specifically, the Vehicles contain a defective electrical system that causes the ICM to not shut down properly when the vehicle's ignition is turned off.

(Id., ¶ 4.) The alleged defect, as defined by the TAC, will be referred to simply as the "ICM defect" throughout this Opinion. According to the TAC, as a result of the ICM defect, the battery gradually drains until the vehicle cannot be started. Moreover, the TAC avers, vehicle owners must replace the battery continually.

Generally summarized, the crux of this putative class action, as alleged in the TAC, is that JLRNA knew of the ICM defect and "actively and intentionally concealed and failed to disclose the [ICM] Defect from Plaintiffs and other members of the Class at the time of purchase or lease, and thereafter," (id., ¶ 119) causing Plaintiffs economic harm, including paying more for the vehicles than they would have had they known of the ICM defect and having to incur

expenses associated with the vehicles' failure to start and need for a new battery.[1] The Court has previously written several opinions concerning the sufficiency of the pleadings. Because the Court writes for the parties only, and because the facts alleged in the currently operative TAC are substantially the same as the facts previously alleged, the Court need not repeat its factual synopsis in detail.

### B. Procedural History

Plaintiffs Block and Manakin filed this action in the District of New Jersey on August 3, 2015, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). On November 24, 2015, they filed their First Amended Complaint, which was partially dismissed pursuant to Rule 12(b)(6) by Order and Opinion issued on May 26, 2016. See Block v. Jaguar Land Rover North Am., LLC, 2016 WL 3032682 (D.N.J. May 26, 2016) ("Block I").[2] The Second Amended Complaint, filed on July 15, 2016, re-asserted the claims which had not been dismissed and re-pled others, including claims brought by additional plaintiffs. The Court thereafter dismissed with prejudice various fraud claims asserted in the Second Amended Complaint. See Block v. Jaguar Land Rover North Am., LLC, 2017 WL 902860 (D.N.J. Mar. 7, 2017) ("Block II"). In Block II, the Court held, in relevant part, that while it was plausible to infer that JLRNA had knowledge of the defect identified in a July 14, 2011 Technical Service Bulletin ("TSB") at some point in time prior to issuing the TSB, the allegations of the Second Amended Complaint did not

---

[1] The TAC's allegations concerning fraud all sound in omissions-based theories of relief. Indeed, Plaintiffs expressly confirm in their brief in opposition to this motion to dismiss that "the TAC *does not* assert any fraud claims based on affirmative misrepresentations . . .." (Opp. Br. at 5 n.3) (emphasis in original).

[2] The Court denied the motion to dismiss as to the common law and Magnuson-Moss statutory claims for breach of express warranty asserted by Block and Manakin. It further denied the motion as to Manakin's claim for breach of implied warranty. Those claims are again included in the currently operative TAC, and the parties agree that they are not at issue in the instant motion to dismiss.

suffice to establish the JLRNA "knew of the defect at the time it placed any of the vehicles later purchased by the named Plaintiffs into the stream of commerce." <u>Block II</u>, 2017 WL 902860, at *10. On a motion for reconsideration brought by Plaintiffs, the Court granted Block, Manakin and Hunter leave to re-plead their statutory and common law fraud claims insofar as those claims are based on alleged omissions by JLRNA related to the alleged vehicle defect. <u>Block v. Jaguar Land Rover North Am., LLC</u>, 2017 WL 1496926 (D.N.J. Apr. 25, 2017) ("<u>Block III</u>"). In their motion for reconsideration, Plaintiffs persuaded the Court that they might be able to rehabilitate their omission-based claims in light of evidence obtained in discovery, which they argued could demonstrate or give rise to the inference that JLRNA knew about the alleged defect prior to each Plaintiff's respective vehicle purchase. At the core of the Court's decision to modify dismissal of the fraud claims to a dismissal without prejudice and with leave to re-plead was the fact that Plaintiffs had obtained internal JLRNA documents which might indicate that Defendant "had knowledge of the defect at issue at some time before it issued the TSB on July 14, 2011." <u>Block III</u>, 2017 WL 1496926, at *1 ("The newly discovered document, when pled, could provide a basis for the plausible inference that Jaguar knew about the defect in early 2009 . . ..") Accordingly, for the omission-based claims to survive this Rule 12(b)(6) motion, the TAC must plead facts demonstrating, or at least supporting the plausible inference that, prior to placing into the stream of commerce the vehicles respectively purchased by Plaintiffs, JLRNA was or should have been aware of the ICM defect.

Defendant argues that the TAC fails to do so as to the omissions-based fraud claims asserted by Plaintiffs Block and Hunter. JLRNA further argues that the TAC is beset with other deficiencies which prevent many of the statutory and common law fraud causes of action from meeting the pleading standards of Federal Rule of Civil Procedure 8(a) and Federal Rule of Civil

Procedure 9. As this is Plaintiffs' third attempt to plead viable statutory and common law fraud

claims, JLRNA now moves for a dismissal of the re-pled claims with prejudice. The causes of

action challenged on this motion to dismiss the TAC are as follows: New Jersey Consumer Fraud

Act ("NJCFA") (First and Second Counts); common law fraud (Third Count); Massachusetts

Consumer Protection Law (Seventh Count); Maryland Consumer Protection Act (Fourteenth

Count).[3]

In turn, the Court will analyze each of the claims at issue.


## II.    DISCUSSION

In reviewing this motion, the Court applies the well-established standard applicable to

Federal Rule of Civil Procedure 12(b)(6), providing for dismissal of a claim for failure to state a

claim upon which relief may be granted: a court must determine whether a complaint states

"sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. (citing Twombly, 550 U.S. at 556). Following Iqbal and Twombly, the Third Circuit

has held that, to withstand a motion to dismiss, the complaint must show, through the facts

alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d

Cir. 2009). In addition, because the claims at issue sound in fraud, they are subject to the

---

[3] The TAC sets forth its claims for relief in eight separate counts. As Plaintiffs have explained, the two counts asserting claims for relief under the NJCFA are both omissions-based claims based on the same factual allegations; their only difference lies in the theory of damages they seek. Thus, they are essentially one claim. Additionally, the Court notes that while the statutory fraud claim under Maryland law is labeled as the "Fourteenth Count," this appears to be a typographical error, as the claim immediately follows the Seventh Count.

heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the party asserting a fraud claim "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## A. New Jersey Consumer Fraud Act

Defendants move to dismiss Plaintiffs' NJCFA claim on the grounds that Plaintiffs have not adequately alleged that JLRNA knew of, yet failed to disclose, a purported defect that affects the vehicles they purchased. The parties have briefed the sufficiency of this claim as it pertains to Plaintiffs Block and Hunter.[4] To review the pertinent facts underlying the claims of these two Plaintiffs: Block is a resident of New Jersey. The TAC alleges that "[o]n or about April 20, 2010, Block purchased a new 2009 Land Rover LR2 from Prestige Land Rover in Paramus, New Jersey . . . , a Land Rover authorized dealership, for approximately $32,173.41." (TAC, ¶ 24.) According to the TAC, "[Block's] vehicle came with Bluetooth, but not navigation." (Id.) The TAC alleges that between 2013 and 2015, Block's LR2 experienced numerous instances of complete battery drain, rendering the car inoperable. Hunter, a resident of Maryland, purchased "a pre-owned 2010 LR2 from Land Rover Alexandria" in or around August 2011. (Id., ¶ 50.) According to the TAC, "Hunter's vehicle came with Bluetooth, but not navigation or satellite radio." (Id.) She alleges that, before purchasing the vehicle, she spoke with dealership employees

---

[4] In Block I, the Court dismissed the NJCFA claim brought by Plaintiff Manakin after conducting a choice of law analysis, finding that New Jersey law did not apply to her claim because "as regards Plaintiff Manakin, nothing, other than the location of Defendant's headquarters, took place in New Jersey." Block I, 2016 WL 3032682, at *3. It does not appear that Manakin has attempted to re-plead a claim under the NJCFA. As to non-New Jersey resident Hunter's NJCFA claim, this motion has not raised a conflict of law argument, and thus the Court does not address that issue. However, the Court notes that it would likely reach a similar conclusion as it did in Block I with regard to Manakin's claim.

and asked "if there were any issues or problems with the LR2." (Id., ¶ 51.) According to the TAC, none were disclosed to her. Hunter further alleges that her LR2 began experiencing battery problems beginning in 2014.

The parties agree that a viable NJCFA based on an omission must allege that the defendant "(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." Judge v. Blackfin Yacht Corp., 357 N.J. Super. 418, 425 (App. Div. 2003), certif. den. 176 N.J. 428 (2003). Indeed, it is well-established that to constitute actionable consumer fraud under the NJCFA, an alleged concealment or omission of material fact, such as a vehicle defect, must be done "knowingly" and "with the intent of inducing reliance." Gotthelf v. Toyota Motor Sales, U.S.A., 525 F. App'x 94, 104 (3d Cir. 2013) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 593 (2013)).

This motion focuses on the first element of the claim, that is, whether the TAC pleads facts indicating that JLRNA knew about the ICM defect prior to placing the vehicles purchased by Block and Hunter, respectively, in the stream of commerce. To evaluate this question, the Court must begin with Plaintiffs' allegations concerning the TSB. Then, it will review the TAC's factual allegations, based on the newly discovered evidence of JLRNA's internal records concerning the ICM defect, to determine whether Plaintiffs have plausibly alleged the requisite knowledge, that is, that JLRNA was aware of information affecting the named Plaintiffs' vehicles prior to the vehicle sales.

As in the previous pleadings, the TAC avers that "on July 14, 2011, Land Rover issued a 'Technical Bulletin' admitting that the LR2 beginning with model year 2008 suffered from a 'Flat Battery' (referred to as the 'TSB')." (TAC, ¶ 79.) The TSB, attached to the TAC as Exhibit

E, expressly states that it concerns the "Flat Battery" problem in LR2 vehicles "w/Navigation only" for model years "2008 – Onwards." (Id., Ex. E.) It summarizes the malfunction as follows:

> The vehicle's battery may be flat, for no apparent reason, after the vehicle is parked overnight or similar period of non-use. This may be caused by the Infotainment Control Module not shutting down correctly if the following conditions occurred at the time of ignition 'OFF' and exiting the vehicle:
>
> 1. Customer viewing the Navigation system map; and
> 2. Customer engaged in an active Bluetooth© telephone call.
>
> If both of these conditions are encountered, a quiescent draw of approximately 1.5 amps on the battery may be induced, leading to the flat battery situation.

(Id.)

Clearly, the TSB describes the ICM electrical system malfunction as necessarily involving use of the ICM's navigation system. The TAC, however, avers that "this [the conditions identified by the TSB] is not the only scenario when the ICM does not shut down properly." (TAC, ¶ 115.) Although no further details are provided about these other scenarios, TAC alleges that by January 2009, JLRNA had "received enough customer complaints to begin an investigation into what was causing the Vehicles' batteries to fail." (TAC ¶ 75; see also TAC ¶ 104.) The TAC lists approximately ten consumer complaints "posted on various websites" and further avers that additional information about flat battery problems was provided by dealerships and service shops, which advised JLRNA of consumer complaints as required JLRNA's standard Dealer Agreement. (Id., ¶ 117; see also id. ¶¶ 104-05.) Pointing to internal documents related to that investigation, attached as exhibits to the TAC, Plaintiffs allege that "[i]n January 2010, Land Rover knew of the [ICM] Defect but had not determined how to fix the Defect . . . Despite this, they omitted and concealed this information from the public." (Id., ¶ 113.)

The problem with the NJCFA claims asserted by Block and Hunter, Defendants argue, pertains to the scope of JLRNA's knowledge of an alleged battery drain defect. They maintain that, even assuming the alleged facts demonstrate that JLRNA was aware of a flat battery problem prior to the issuance of the TSB, nothing in the TAC, including its expanded factual allegations based on the internal pre-TSB investigation, gives rise to an inference that the purported defect identified by JLRNA was as broad as the ICM defect defined in the TAC. Instead, JLRNA contends, the factual allegations, at most, indicate knowledge that the ICM fails to shut down when the navigation feature is in use, a malfunction the vehicles purchased by Block and Hunter were not capable of experiencing. In other words, the NJCFA claims must be dismissed, Defendant argues, because Plaintiffs fail to establish a nexus between the alleged omission and any harm allegedly experienced by Block and Hunter.

To examine whether JLRNA's alleged knowledge is sufficiently broad to encompass an omission pertaining to the vehicle sales to Block and Hunter, the Court must look to the well-pleaded factual allegations in the aggregate. As to the customer complaints, the TAC provides no meaningful information expanding notice of a defect beyond the situation ultimately described in the TSB. The TAC merely states that, as of January 2009, JLRNA had received sufficient complaints from consumers, directly and indirectly through the dealerships, to launch an investigation into the reports of battery drain. The mostly unspecified complaints do not point to any particular cause of the drain, much less put JLRNA on notice that the vehicles' ICM is not properly shutting down. Indeed, the JLRNA log of January 22, 2009, which documents the opening of the investigation, states that while it is possible that the Bluetooth module remains live "if the vehicle is switched off whilst still in a call," it also expressly states that the root cause of the reported battery drain is, as of that time, unknown. (TAC, Ex. A.) The TAC further avers

that, some months later, "beginning in at least August 2009," JLRNA "believed there were multiple reasons why a quiescent draw was occurring . . . ." as reflected by internal company presentations given by the engineer responsible for investigating the reported battery drain of the LR2. (TAC, ¶¶ 18-19.) But, the internal JLRNA documents attached to the TAC tell a different story. An internal company presentation concerning the flat battery problems states as follows:

> Concern replicated on every model year vehicle and every ICM version of software.
>
> Cause is the HLDF shutdown is interrupted when the following conditions are met:
>
> 1. Vehicle is running
> 2. Bluetooth phone call is present through the vehicle
> 3. Customer is viewing the Navigation Map
> 4. Customer shuts off the vehicle with #'s 2 and 3 still active

(TAC, Ex. B.)

The Court finds that the TAC fails to plead plausible NJCFA claims for Plaintiffs Block and Hunter. Viewing the well-pleaded allegations in the most favorable manner to Plaintiffs, dual operation of the ICM's navigation system and another ICM feature, specifically a Bluetooth phone call, was a critical component of the ICM shutdown failure of which JLRNA ultimately became aware. According to the TAC, the LR2 vehicles purchased by Block and Hunter, respectively, were not equipped with a navigation system. Thus, even when considered in their totality, the allegations of the TAC fail to establish or give rise to an inference that JLRNA knowingly concealed a material fact from Block and Hunter, as required to plead a sufficient NJCFA claim.

Plaintiffs have argued that the NJCFA claim nevertheless fits with the facts alleged regarding Block's and Hunter's vehicle purchases and ensuing battery failure. They point out that the actionable omission has, from the start of this litigation, been identified as a failure to

disclose the LR2's battery drain due to improper ICM shutdown. In other words, Plaintiffs maintain, the alleged defect underlying JLRNA's omission has never been tethered to operation of the ICM's navigation feature. Thus , they argue that Defendant's contention that consumers such as Block and Hunter fall outside the alleged fraud is belied by the TAC and the history of this action.

To be sure, the TAC defines the allegedly concealed defect more broadly than the previous complaint, to encompass a general failure of the LR2's ICM to shut down leading to battery depletion, without limiting the identified failure to improper shutdown "after certain vehicle applications are used, such as the navigation system or Bluetooth system." (Compare SAC ¶ 4 with TAC ¶ 4.) Plaintiffs' argument, however, misses the mark irrespective of whether the alleged omission pertains to a battery drain defect defined by use of certain ICM applications or not. The element missing from the TAC's pleading of a claim under the NJCFA is Defendants' *knowing* concealment of the alleged defect. The factual allegations establishing knowledge rely primarily on the TSB and the investigation on which the TSB is predicated. The TSB and newly-discovered internal documents identify operation of the ICM's navigation system *and* Bluetooth as an essential aspect of the LR2's purported battery drain defect. This appears to be the extent of JLRNA's alleged knowledge that something was wrong with the LR2's ICM. Plaintiffs attempt to bolster their pleading as to the NJCFA claim's "knowing" concealment element by pointing out that the TAC expressly states that "the issue described in the TSB 'is not the only scenario when the ICM does not shut down properly.'" (Opp. Br. at 22, quoting TAC ¶ 115.) But, this allegation is conclusory at best. Missing from the TAC are factual allegations identifying other scenarios of improper shutdown, and, more to the point, other scenarios of which JLRNA became aware prior to placing Plaintiffs' vehicles in the stream of

commerce. Instead, the well-pleaded factual allegations of the TAC demonstrate that Defendant was aware that the LR2's ICM did not shut down properly when its navigation system was engaged at the time the engine was turned off, leading to a drain on the car's battery. This is the defect Defendant knew about yet failed to disclose to Plaintiffs, assuming the facts to be true and drawing all inferences the alleged facts might support. The TAC also makes clear that the vehicles purchased by Block and Hunter could not be affected by this allegedly concealed defect because their vehicles did not have the navigation option as part of the ICM. Thus, the NJCFA claims asserted by Block and Hunter fail because they turn on an alleged omission of material fact that does not relate to the purchase transactions on which the claims are based.

The Court notes that Plaintiffs have contended that they have been inappropriately held to a summary judgment standard by Defendant's motion because it demands a proffer of facts and evidence which surpass what is required to sufficiently plead knowledge on an NJCFA omission-based claim and, moreover, because it challenges the Plaintiffs' interpretation of the internal JLRNA documents attached to the TAC. In support of their position that the alleged facts suffice to allow the NJCFA claim to proceed, Plaintiffs draw the Court's attention to two district court opinions: Majdipour v. Jaguar Rover North America, 2013 WL 5574626 (D.N.J. Oct. 9, 2013) and Henderson v. Volvo Cars of North America, 2010 WL 2925913 (D.N.J. July 21, 2010). Majdipour involved an omission-based claim under California's consumer protection statute, based on allegations that JLRNA failed to disclose a certain defect at the time the plaintiffs purchased their vehicles. Majdipour, 2013 WL 5574626, at *3. The Majdipour court found that a TSB issued by JLRNA as to the subject defect in certain model year vehicles, together with allegations of internal sources of information about the vehicle malfunction, was sufficient to state with plausibility that JLRNA had knowledge of the defect in vehicles of the identified

model years, and by inference, vehicles with model years adjacent to the range identified in the TSB. Id. at *18. In Henderson, the court concluded that while the allegations were "sparse," the plaintiffs had sufficiently pled their omission-based NJCFA claim by, in relevant part, alleging that the defendant knew of the allegedly concealed defect based on "widespread complaints of transmission problems on the internet; complaints to the National Highway Traffic Safety Administration ('NHTSA'); complaints received by Volvo; [and] technical service bulletins issued by Volvo in attempts to address this known problem." Henderson, 2010 WL 2925913, at *1, 5. Neither of these cases are persuasive, in light of the very different set of facts alleged in the TAC before the Court.

In sum, taking all well-pleaded facts as true, and viewing them in the aggregate, the Court cannot conclude that they give rise to a plausible inference that JLRNA was aware of any defect other than what other than what is set forth in the TSB and background investigation documents the company discovered in its internal investigation. Therefore, and for the reasons set forth above, the Court finds that as to Plaintiffs Block and Hunter, the NJCFA claims cannot withstand Defendant's motion. Therefore, the claims in the First and Second Counts of the TAC will be dismissed pursuant to Rule 12(b)(6). Moreover, because the Court discerns no factual basis which could allow Block and Hunter to state sufficient NJCFA claims, and because the claims remain insufficient in spite of previously amendments to the pleadings permitted by the Court, these claims will be dismissed without leave to re-plead. See Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

**B. Massachusetts Consumer Protection Law**

Plaintiff Manakin, a resident of Massachusetts, also separately asserts a claim against JLRNA under the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, ("MCPL"), which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a) According to the TAC, the facts related to Manakin's vehicle purchase are as follows: "On or about March 19, 2012, Manakin purchased a 2010 Land Rover LR2 from MetroWest Motorcars in Northborough, Massachusetts for $16,062.50. The vehicle included Bluetooth, satellite radio, and a navigation system." (TAC ¶ 37.)

To state a claim under the MCPL, a plaintiff must allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." Giesen v. Herb Chambers of Sudbury, Inc., 2015 WL 12697648, at *9 (D. Mass. May 13, 2015) (citing Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009), aff'd 460 Mass. 500 (2011)). The purpose of the Massachusetts consumer protection statute is "to provide 'proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities.'" Casavant, 76 Mass. App. Ct. at 76 (quotation omitted). Defendant argues that Manakin fails to state a plausible MCPL claim for two reasons: (1) Manakin fails to plead that she sent a timely demand letter, as required by the statute, or is otherwise exempt from this requirement and (2) the statute does not provide relief for purchases of second-hand products from unauthorized retailers.

As to the demand letter, Defendant's argument is correct. In its Opinion of March 7, 2017, the Court reviewed the MCPL's pre-suit requirement of a written demand for relief. See Block II, 2017 WL 902860, at * 6 (Mar. 7, 2017). The Court had dismissed Manakin's claim for failure to plead affirmative facts showing that she either complied with the demand requirement or is exempt from it. The same deficiencies prevent the claim from proceeding now. The TAC alleges that Manakin sent JLRNA a written notice of its alleged violation of the MCPL by letter dated November 7, 2016. The statute requires that, to assert a claim under the MCPL, the written demand be mailed or delivered "as least thirty days *prior to the filing* of any such action." Mass. Gen. Laws ch. 93A, § 9(3) (emphasis added). However, Manakin first asserted a claim under the MCPL on July 15, 2016 and only sent her demand letter almost four months later. Plaintiff cites no authority which would permit an MCPL claim to proceed in spite of a plaintiff's failure to comply with the demand letter requirement in accordance with the pre-suit deadline set by statute. Plaintiffs also argue in their opposition brief that Manakin is not subject to the demand letter prerequisite under a statutory exception for claims against respondents that do not maintain a place of business or assets in Massachusetts. They maintain that the demand letter requirement does not apply because JLRNA is a New Jersey company with its principal place of business in New Jersey. However, they do not allege this exemption in the TAC, and as such, the Court cannot consider these assertions when reviewing the sufficiency of the MCPL claim. See Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (holding that "the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Indeed, Plaintiffs presented this identical argument to the Court on the motion to dismiss the Second Amended Complaint,

and the Court likewise rejected Plaintiffs' attempt to invoke the statutory exception without

pleading that Manakin's MCPL claim falls within the exception's scope. Block II, 2017 WL

902860, at * 6.

Additionally, Manakin's claim under the MCPL is also deficient for lack of any

allegation that JLRNA played any role in selling her the model year 2010 LR2 she purchased

from a company known as "MetroWest Motorcars" in 2012. The Supreme Court of

Massachusetts has held that although a plaintiff and a defendant need not be in privity of contract

for liability to attach under MCPL chapter 93A, section 11, it stressed that the defendant must

have played more than a "minor role" in the purchase transaction giving rise to the alleged

nondisclosure on which the claim is based. See Nei v. Boston Survey Consultants, Inc., 388

Mass. 320, 324 (1983). Accordingly in Nei, the Court held that a property surveyor defendant

sued for an allegedly unlawful failure to disclose information in connection with a property sale

could not be liable under the MCPL where it had not participated in the negotiations or signing

of the purchase agreement, had made no misstatements related to the sale, did not have a

business relationship with the plaintiffs, and generally played no active role in the sale

transaction. Id.; see also John Boyd Co. v. Boston Gas Co., 775 F. Supp. 435, 440 (D. Mass

1991) (following Nei and holding that "although the Supreme Judicial Court [of Massachusetts]

has yet to define the outer limits of the relationship required under [MCPL] Chapter 93A, some

business connection between the parties is an essential element of liability under the statute."). In

this case, Manakin does not allege any involvement by JLRNA in the sale of her LR2 other than

the association of the vehicle with its brand name and Manakin's review of general marketing

material. She does not allege that her purchase was made at an authorized Land Rover

dealership. Moreover, although the TAC is not explicit on this point, it can reasonably be inferred that Manakin purchased her LR2 at least second-hand, further attenuating any relationship between Manakin and JLRNA.[5]

Plaintiffs contend that Manakin may assert an MCPL claim against JLRNA based on a decision by the Massachusetts Supreme Court recognizing that "indirect purchasers" may bring such a claim. See Ciardi v. F. Hoffmann La Roche, Ltd., 436 Mass. 53, 60 (2002). The cited case, Ciardi, is completely inapposite to the case at bar. While the cause of action at issue in Ciardi arose under the MCPL, it was an antitrust claim. Id. at 54-55. The Ciardi plaintiff was the ultimate consumer of vitamin products which had been manufactured and distributed by the various defendants. Id. He sued under the MCPL for an alleged price-fixing conspiracy among the defendants, which the plaintiff alleged resulted in artificially inflated prices passed on to him and other consumers. Id. at 55. The Ciardi court held that, unlike the rule barring indirect purchasers from recovering under federal antitrust laws, a direct relationship between the plaintiff and the entities that manufactured and distributed the products was not necessary to assert a price-fixing claim under the MCPL. Id. at 61-63. Distinguishing the decisions issued in John Boyd Co. and Nei, the Ciardi court found that a sufficient nexus between the vitamin consumer plaintiff and the alleged price-fixing defendants had been alleged given the they were all participants in the contemplated chain of distribution for the products. Id. at 65. In this case, in contrast, Manakin an omission-based fraud claim, not an antitrust action. Moreover, she has not alleged that she purchased the vehicle from JLRNA or an authorized retailer. In other words, she has not alleged that she and JLRNA had a business connection, albeit indirect, by virtue of

---

[5] Indeed, Plaintiffs' brief in opposition to the motion to dismiss concedes that the Manakin purchased a used vehicle at an unauthorized dealership.

participating in the chain of distribution from manufacturer to ultimate consumer. Ciardi's analysis and holding do not apply.

For this very reason, Plaintiff's other cited, though non-binding case, Velasco, is also distinguishable. See Velasco v. Chrysler Group LLC, 2014 WL 4187796 (C.D. Cal. Aug. 22, 2014). There, the federal district court for the Central District of California rejected the argument that the consumer plaintiff did not have a sufficient relationship with the defendant car manufacturer to bring a claim under the MCPL for failure to disclose a latent defect in the vehicle. Id. at *9. However, unlike Manakin's situation, the Velasco plaintiff had alleged in his complaint that he purchased his vehicle from an authorized dealership, the critical fact underpinning the Velasco court's finding that a sufficient business relationship existed between the parties to allow the MCPL claim to proceed. Id. at *8-9 (distinguishing Nei, 388 Mass. at 324).

Thus, for the reasons discussed, the Court finds that Manakin has again failed to state a plausible claim under the MCPL. The Seventh Count of the TAC will therefore be dismissed, without leave to re-plead.

## C. Maryland Consumer Protection Act

Defendant argues that Hunter fails to state a cognizable Maryland CPA claim against JLRNA because, like Manakin, she does not, and cannot, allege that JLRNA was in any way involved in the purchase transaction of her used vehicle. This lack of involvement, JLRNA contends, prevents Hunter from pleading a plausible claim for relief under the Maryland CPA. Defendant is correct.

The Maryland consumer fraud statute prohibits certain unfair and deceptive trade practices "in the sale, lease, rental, loan, or bailment of any consumer goods." Md. Code Ann.

Com. Law § 13-303(1). In light of this statutory language, the Maryland Court of Appeals has expressly held that to be actionable under the statute, "the deceptive trade practice must occur *in the sale or offer for sale to the consumer*." <u>Morris v. Osmose Wood Preserving</u>, 340 Md. 519, 541 (1995) (emphasis added). Accordingly, in <u>Morris</u>, the Maryland Court of Appeals affirmed dismissal of a Maryland CPA claim brought by townhome purchasers against the manufacturers of allegedly defective plywood installed in their homes for misrepresentations made by the manufacturers in marketing their product to home builders. <u>Id.</u> at 541-42. It reasoned that, insofar as any deceptive practices occurred, the allegations of the complaint did not show that they were made by the plywood manufacturer defendants in the "selling, offering, or advertising [of] the townhouses that the plaintiffs bought." <u>Id.</u> at 542.

Similarly, in the TAC, Hunter fails to allege any involvement by Defendant JLRNA in the transaction in which she purchased her used LR2 from a Land Rover dealership. Hunter alleges that she spoke with employees of the dealership in connection with the sale and that they made representations to her regarding the vehicle. She further alleges that, although she asked dealership employees "if there were any issues or problems with the LR2," none were disclosed to her. (TAC, ¶ 51.) Hunter fails to allege, however, what omissions of material fact can be attributed to Defendant JLRNA in connection with this sale.

Plaintiffs, in response to this argument raised by Defendant, appear to concede JLRNA's lack of direct involvement in the sale but counter that the Maryland CPA claim is nevertheless sufficiently pled because Maryland courts have held that "'in limited circumstances, liability under the Consumer Protection Act may extend to one who is not the direct seller.'" (Opp. at 35, quoting <u>White v. Kennedy Krieger Inst.</u>, 221 Md. App. 601, 653, <u>cert. den.</u> 443 Md. 237 (2015). The extension of liability to third-party entities, however, appears to be limited to situations in

which the third party, while not in privity with the purchaser, played a substantial role in the sale transaction. See White, 221 Md. App. at 653-54. Reviewing the jurisprudence on this matter, Maryland's intermediate appellate court observed that "[l]iability has only been extended to third parties under the CPA in limited instances where the third party's actions were so integral that the sale of consumer goods would not have proceeded without their involvement." Id. at 653; accord Morris, 340 Md. at 541 (1995) (observing that "[i]t is quite possible that a deceptive trade practice committed by someone who is not the seller would so infect the sale or offer for sale to a consumer that the law would deem the practice to have been committed 'in' the sale or offer for sale.") (internal quotations omitted).

To the extent that some alleged deceptive trade practice by JLRNA outside of Hunter's direct purchase transaction with the dealership might arguably form the basis of a claim under the Maryland CPA, Hunter fails to plead any facts which would support this theory. Liability under the Maryland CPA can attach to a party not directly involved in the subject sale only "when the third party's misrepresentation [or omission] was a necessary component in the sale or lease." White, 221 Md. App. at 654. In Morris, the Maryland Court of Appeals observed that "a deceptive statement appearing on a manufacturer's packaging that is targeted to consumers" may constitute conduct subjecting a third party to liability. Morris, 340 Md. at 541.  Hunter does not allege that, prior to purchasing her vehicle, she viewed any advertisement or marketing material disseminated by JLRNA, much less allege that she was somehow influenced to purchase her vehicle by a targeted communication by JLRNA which failed to disclose the alleged vehicle defect.

In addition, Hunter's claim under the Maryland CPA is deficient for failure to allege that JLRNA made a knowing omission of material fact. To state a cause of action under the Maryland

CPA, the following elements must be established: "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon and (3) causes the plaintiff actual injury." Todd v. XOOM Energy Maryland, LLC, 2017 WL 667198, at *5 (D. Md. Feb. 16, 2017). An unfair trade practice includes "a knowing concealment, suppression, or omission of any material fact . . .." Md. Code Ann., Com. Law § 13-301(9). For the reasons discussed in section II.A. of this Opinion, the TAC fails to allege that JLRNA knowingly concealed a material fact from Hunter. Thus, Hunter's Maryland CPA claim is also deficient for failure to plead an essential element.

The claim will be dismissed, without leave to re-plead.

### D. Common Law Fraud

Finally, Plaintiffs were given leave to amend their common law fraud claims insofar as those claims are based on JLRNA's alleged failure to disclose material facts about the purported vehicle defect. The Court had previously dismissed the common law fraud claims for lack of factual allegations plausibly demonstrating that JLRNA *knowingly* omitted material facts. See Block II, 2017 WL 902860, at *11. The fraud claims asserted by Block and Hunter continue to suffer from this deficiency. See Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 43 (App. Div. 2000) (holding that an essential element of a common law fraud claim under New Jersey law is that the defendant made a misrepresentation or omission "knowing the misrepresentation to be false or the omission to be material"); Green v. H & R Block, Inc., 355 Md. 488, 525 (1999) (holding that under Maryland law, a claim for fraudulent concealment requires, among other elements, that plaintiff establish that "the defendant intended to defraud or deceive plaintiff").

Additionally, in this motion, JLRNA has argued that none of the three Plaintiffs' common law fraud claims can proceed because, under each applicable state's law, a duty to

disclose is a required element of the claim and the TAC does not allege facts to support the existence of a duty. The Court need not consider this argument as to Block and Hunter, as their fraud claims must be dismissed for the reason discussed.

As to Manakin, the Court looks to the law of Massachusetts. "Liability for nondisclosure exists under Massachusetts law only where is a duty to disclose." Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009); see also Sahin v. Sahin, 435 Mass. 396, 402 n. 9 (2001) (noting that in a common law action for fraud under Massachusetts laws, "[f]raud by omission requires both concealment of material information and a duty requiring disclosure."). To state a plausible fraud claim based on non-disclosure, Massachusetts law holds that a plaintiff must plead facts which establish that "the defendant owed to the plaintiff a fiduciary duty or other similar relation of trust and confidence that required disclosure." Roadmaster Indus. v. Columbia Mfg., 893 F. Supp. 1162, 1179 (D. Mass. Aug. 2, 1995). Apart from a fiduciary relationship between a plaintiff and a defendant, a duty to disclose may also exist when "there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading" or when "the nondisclosed fact is basic to, or goes to the essence of, the transaction." Taylor, 576 F.3d at 31 (quotations omitted). JLRNA has argued that the TAC fails to establish that any of these limited circumstances giving rise to a duty of disclosure existed as between Manakin and JLRNA. The Court agrees. Clearly, the TAC pleads no facts concerning a fiduciary relationship between Manakin and JLRNA, nor does it alleged that JLRNA made a partial or ambiguous statement to Manakin requiring disclosure to prevent the statement from being misleading. As for the requirement to disclose facts going to the essence of the transaction, the Court need not consider whether the alleged battery drain defect satisfies that basis for a duty of disclosure, as Manakin has failed to allege that she engaged in a

transaction with JLRNA. As previously set forth, the transaction in which Manakin purchased her vehicle involved some third party identified as MetroWest Motorcars. Thus, Manakin's common law fraud cause of action, based on nondisclosure, fails to state a claim upon which relief may be granted for lack of factual allegations in the TAC demonstrating that JLRNA owed her a duty to disclose.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the following claims will be dismissed: the NJCFA claims; Manakin's claim under the MCPL; Hunter's claim under the Maryland CPA; and all three Plaintiffs' common law fraud claims. An appropriate Order will be filed.

___ s/ Stanley R. Chesler ___
STANLEY R. CHESLER
United States District Judge

Dated: December 23, 2019