<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMY BLOCK and VICTORYA MANAKIN, on behalf of themselves and the Putative Class,<br><br>                      Plaintiffs,<br><br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC,<br><br>                      Defendant. | **Civil Action No. 15-5957 (SRC)**<br><br>**OPINION** |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before this Court on the motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Defendant Jaguar Land Rover North America, LLC ("Jaguar"). Plaintiffs Amy Block ("Block") and Victorya Manakin ("Manakin") (collectively, "Plaintiffs") have opposed the motion. For the reasons stated below, the motion will be granted.

**LEGAL STANDARD**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion

1

for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). "In reviewing the

record, the court must give the nonmoving party the benefit of all reasonable inferences." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

This case arises from allegations that Jaguar manufactured certain Land Rover ("LR") vehicles, which Plaintiffs purchased, that had a defect relating to an optional component, the "Infotainment Control Module" (the "ICM").   The Third Amended Complaint alleges:

> The Vehicles are designed and manufactured with a uniform and inherent design defect that causes the ICM to not properly shut down, which results in the ICM continuing to operate after the vehicle's engine has been shut off, thereby draining the battery. Specifically, the Vehicles contain a defective electrical system, which causes the ICM to not shut down properly when the ignition is turned off (hereinafter, the "Defect").

(Third Am. Compl. ¶ 4.)   The Third Amended Complaint alleges that Jaguar knew about the Defect by at least January, 2009, and issued Technical Bulletin LTB00391 (the "TSB"), dated July 14, 2011, about the alleged Defect, which states, in relevant part:

> The vehicle's battery may be flat, for no apparent reason, after the vehicle is parked overnight or similar period of non-use. This may be caused by the Infotainment Control Module not shutting down correctly if the following conditions occurred at the time of ignition 'OFF' and exiting the vehicle:
>
> 1. Customer viewing the Navigation system map; *and*
> 2. Customer engaged in an active Bluetooth© telephone call.

3

> If ***both*** of these conditions are encountered, a quiescent draw of approximately 1.5 amps on the battery may be induced, leading to the flat battery situation.

(Third Am. Compl. ¶¶ 15, 33, Ex. E.)

Jaguar has moved for summary judgment as to three breach of warranty claims based on the alleged Defect.

### I. Fourth Count: breach of express warranty

Jaguar first moves for summary judgment on the Fourth Count, for breach of express warranty. As to Manakin, the parties do not dispute that, on December 10, 2012, within the warranty period, Manakin took her LR vehicle to Norwood Jaguar Land Rover, a dealership, for service, and that the record contains a copy of the invoice for this visit. (JLRNA_002602-03.) The invoice describes the reason for the visit as follows: "CUSTOMER STATES VEHICLE HESITATES TO START INTERMITTENTLY, HAPPENED AFTER VEHICLE WAS RUNNING FOR ABOUT 15 MINS." (JLRNA_002602.) The invoice also states that a battery test was performed and the battery passed the test. (Id.) The parties do not dispute that Manakin was not charged for the service visit.

Jaguar argues that it is entitled to judgment as a matter of law because Manakin has no evidence of a breach of the express warranty. Manakin introduces her opposition with this summary of her argument:

> Manakin brought her vehicle in for service prior to the expiration of the warranty claiming that the vehicle was hesitating to start. Defendant claims this was unrelated to the defect causing the battery to fail. However, whether or not the hesitating to start was being caused by the drained battery is a fact question for the jury.

(Pls.' Opp. Br. 2.) Plaintiffs bear the burden of proof of breach of express warranty at trial. Thus, to defeat the motion for summary judgment, "the nonmoving party creates a genuine issue

4

of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." Brewer, 72 F.3d at 330. Plaintiffs' theory of the breach appears to be that, during the warranty period, Manakin brought the vehicle for service of a problem that "was being caused" by the alleged defect. (Pls.' Opp. Br. 2.) This Court need not reach the legal question of whether that is a viable breach of warranty theory, but will consider the evidence to determine whether the evidence is sufficient to allow a jury to find the facts needed to support it.

Plaintiffs contend that Manakin sought service "claiming that the vehicle was hesitating to start." While the ambiguous wording of the service invoice ("customer states vehicle hesitates to start intermittently") makes this a plausible inference, Jaguar has pointed to other relevant, probative evidence: Manakin's deposition testimony about that service visit. Manakin's testimony persuasively clarifies the meaning of the ambiguous wording on the service invoice. That testimony states:

> Q. And could you please read for me where it says, "A customer states," right at the top of the narrative?
> A. "Customer states vehicle hesitates to start intermittently. Happened after vehicle was running for about 15 minutes."
> Q. Right. Do you remember this concern?
> A. Yes.
> Q. In your own words, what was your concern?
> A. When I would start the car, there was a hesitation in the engine starting. It was just -- it was a long crank, and it felt like it was just not turning over, and it was very abnormal compared to a typical way that you would start the engine.
> Q. What did you mean when you said it happened after vehicle was running for about 15 minutes?
> A. That at some point, it was shut off after I had used it for roughly 15 minutes. I must have gotten back into the car to start it and that's where the problem occurred.
> Q. So let me make sure I understand this. So you would start the vehicle and it would have a long crank, and then that would go away after about 15 minutes? Am I understanding that?
> A. No, I think what this -- what this means is I started the car fine. I drove it for about 15 minutes. I shut it off for whatever reason, and then when I tried to start it again, after 15 minutes of having just driven it, that's where the problem came

5

>about.
>Q. And did the problem prevent you from starting the vehicle or did it just extend the crank?
>A. No, at this point, it was just not sounding normal.
>Q. Okay. Was this the first time that you experienced this concern?
>A. It may not have been the first time, but it was probably the first time that I brought it to the attention of Jaguar. You know, I'm sure that I heard it a few times before that and didn't think anything of it.

(Manakin Dep. 49:1-50:25, Kidney Dec. Ex. F.) In this testimony, Manakin states quite clearly that the "problem" did not prevent her from starting the vehicle, but rather, "it was just not sounding normal." Also, "it was a long crank." Manakin also stated that she had heard the abnormal sound "a few times before" and thought nothing of it.

Plaintiffs do not address Manakin's testimony about this service visit. Plaintiffs do not even attempt to argue that a reasonable jury, hearing this testimony, would infer that the abnormal starting sound was caused by, or was a manifestation of, the alleged Defect. The undisputed evidence shows that the battery was tested and passed the test; Plaintiffs have offered no evidence of battery drain or a "flat" battery, or a failure of the vehicle to start. To the contrary, based on this evidence, no reasonable jury could conclude that there was a battery problem, or a failure of the vehicle to start, and Plaintiffs have suggested no other link to the alleged defect. In short, Plaintiffs have offered no evidence that, while under warranty, Manakin's vehicle manifested the alleged defect described in the technical service bulletin. Thus, Plaintiffs have offered no evidence to support finding a breach of the express warranty, and have failed to defeat the motion for summary judgment as to Manakin's express warranty claim.

The parties' arguments as to Block's breach of express warranty claim are similar. Jaguar argues that it is entitled to judgment as a matter of law because Block has no evidence of

6

a breach of the express warranty. The summary judgment burden then shifts to Block, who points to evidence that she brought the vehicle to a dealership, Land Rover of Parsippany Inc., for service on September 6, 2011, during the warranty period. The service invoice from that date states: "C/S THAT AM RADIO DOES NOT WORK. CAUSE: TEST RADIO NO OUTPUT AM REPLACE HEAD UNIT." (Plaintiffs 0000025.) The invoice also states: "RADIO INTERNAL FAULURE [sic] CHECK OPERATION, NO OUTPUT FROM AM, ALL OTHER FUNCTIONS OK SWAPPED WITH KNOWN GOOD UNIT, FUNTIONALITY [sic] RETURNED." (Id.) There was no charge for this service visit. (Id.)

Plaintiff asserts that the radio head is part of the ICM, the unit alleged to be defective, and that a jury should determine whether this was related to the alleged defect. Plaintiffs have offered no evidentiary basis for such an inference. The service invoice does not mention "ICM" or "internal control module," nor have Plaintiffs even offered an argument that links this radio repair to the alleged defect. Plaintiffs' opposition brief asserts that the radio head is part of the ICM, but cites to no evidence in support of this assertion. The service invoice states: "REPLACED RADIO UNIT." (Id.) No reasonable jury could infer from this evidence that this service visit involved failure to start the vehicle, a battery drain, a flat battery, the ICM, or the alleged defect; there is no evidence to support any such inference.

Plaintiffs also argue, in opposition to Jaguar's motion, that this Court should refuse to enforce the written warranty because it is unconscionable under New Jersey law. Under New Jersey law, the unconscionability and unenforceability of a contractual provision is a matter of law for the Court:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without

> the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

N.J. Stat. Ann. § 12A:2-302. The Appellate Division of the New Jersey Superior Court has summarized the fundamental principles for the inquiry as follows:

> In determining whether to enforce the terms of a contract of adhesion, courts look not only to the take-it-or-leave it nature or the standardized form of the document, but also to: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion motivating the "adhering" party; and (4) the public interests affected by the contract. *Rudbart*, 127 N.J. at 356. Those factors focus on procedural and substantive aspects of the contract "to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement." *Delta*, 189 N.J. at 40.

Clare v. Act, Inc., 2020 N.J. Super. Unpub. LEXIS 2037, at *12-13 (N.J. Super. Ct. App. Div. Oct. 26, 2020).

The parties do not dispute that the written warranty for both Block's and Manakin's vehicles contained these limitations: "The basic warranty period is for four (4) years or until the vehicle has been driven 50,000 miles, whichever occurs first." (Def.'s 56.1 Stmt. ¶ 15.) Plaintiffs argue that these durational limits are unconscionable because Jaguar knew about the alleged Defect since January of 2009 and never informed Plaintiffs.

Plaintiffs have failed to make any demonstration that the durational limits of the warranty are substantively unconscionable, that they are so oppressive or so inconsistent with public policy that they would be unconscionable to enforce. There is no evidence in the record before this Court that could persuade a reasonable jury that either vehicle owned by Block or Manakin manifested the alleged Defect while under warranty. Therefore, at most, Plaintiffs present the Court with a scenario in which a manufacturer knew of a potential defect, one that may or may not manifest for customers, but which did not manifest during the warranty period for Block and

8

Manakin.   At most, for Block and Manakin, one could infer that the alleged Defect was latent during the warranty period.   Plaintiffs have failed to persuade this Court that Jaguar's conduct – not informing Plaintiffs of a potential defect that did not manifest in their vehicles during the warranty period – was sufficiently oppressive or inconsistent with public policy as to make the durational limits unenforceable as unconscionable.   As the Second Circuit explained:

> Moreover, virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986).   The Third Circuit has cited Abraham approvingly and characterized these statements as "the general rule:"

> Duquesne in substance argues that the contract protects it against defects existing at the time the generator was installed but not discovered until after the warranty period.   But the general rule, from which we see no reason to deviate, is that "an express warranty does not cover repairs made after the applicable time . . . has elapsed." *Abraham v. Volkswagen of Am., Inc*., 795 F.2d 238, 250 (2d Cir. 1986) (citing cases) (applying federal common law).   Thus, "'latent defects' discovered after the term of the warranty are not actionable."   *Id.* at 249-50.

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995).

Plaintiffs have not mustered the evidence to demonstrate that there is evidence from which a reasonable jury could infer that the alleged defect did, in fact, manifest in Plaintiffs' vehicles after the expiration of the warranty, but, even if they had done so, the general rule, as stated by the Third Circuit, holds that latent defects discovered after the term of the warranty are not actionable.   Such a scenario is ordinary; there is no basis to find the manufacturer's ordinary

9

conduct to be oppressive, or the durational limits of the warranty to be unconscionable.

This Court determines that Plaintiffs have offered no evidence that, while under warranty, either Block's or Manakin's vehicle manifested the alleged Defect. Thus, Plaintiffs have offered no evidence to support finding a breach of the express warranty, and have failed to defeat the motion for summary judgment as to Block's and Manakin's express warranty claims.

Jaguar also moves for summary judgment as to the Sixth Count, breach of written warranty under the Magnuson-Moss Warranty Act, on the ground that the Sixth Count is premised on the alleged breach of a written warranty, which this Court has now determined that Plaintiffs have failed to prove. See Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 254 (3d Cir. 2010) ("Cooper's Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, Cooper's Magnuson-Moss claim was also properly dismissed.") Plaintiffs have not opposed this argument, and the motion for summary judgment as to the Sixth Count will be granted.

## II.     Fifth Count: breach of implied warranty

Jaguar moves for summary judgment as to the Fifth Count, breach of implied warranty, as to Manakin. On a previous motion to dismiss, this Court dismissed with prejudice Block's breach of implied warranty claim, having determined that the Second Amended Complaint failed to plead sufficient facts to support equitable tolling based on fraudulent concealment, and so the claim was time-barred. Block v. Jaguar Land Rover N. Am., LLC, 2017 WL 902860, at *4 (D.N.J. Mar. 7, 2017), modified on reconsideration, 2017 WL 1496926 (D.N.J. Apr. 25, 2017). Jaguar now moves for summary judgment on Manakin's implied warranty claim on the ground that it also is time-barred. There is no dispute that, absent application of the doctrine of equitable tolling, Manakin's implied warranty claim is barred by the statute of limitations.

10

Manakin argues that the Court should equitably toll her claim due to fraudulent concealment, but fails to even allege the specific facts, much less point to particular evidence in support of those facts, that could persuade a reasonable jury that Jaguar, the manufacturer of the vehicle, fraudulently concealed specific information at relevant times. Plaintiffs have failed to present sufficient evidence to allow a jury to find that Jaguar fraudulently concealed the defect from Manakin at a specific time.

This Court previously addressed these issues in regard to the motion to dismiss Block's implied warranty claim. Block v. Jaguar Land Rover N. Am., LLC, 2016 WL 3032682, at *5 (D.N.J. May 26, 2016). This Court found that the relevant statute of limitation states:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.J. Stat. Ann. § 12A:2-725. This Court considered the parties' arguments and held:

> New Jersey courts recognize the doctrine of equitable tolling: "[t]ypically the doctrine is applied where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Villalobos v. Fava, 342 N.J. Super. 38, 50 (N.J. Super. Ct. App. Div. 2001). The Amended Complaint does not plead facts to make plausible the assertion that Block was induced or tricked by Jaguar's misconduct into allowing the filing deadline to pass. There is no basis for equitable tolling of the four-year statute of limitations.
>
> Absent a basis for equitable tolling, this Court applies subsection (2), which provides that the cause of action accrued when the tender of delivery was made. The Amended Complaint alleges that Jaguar delivered the vehicle to Block in April of 2010. (Am. Compl. ¶ 17.) Because this is a claim for breach of an implied warranty, it cannot fall within the exception for warranties which explicitly extend to future performance. The four-year statute of limitations ended not later than April of 2014. The initial Complaint in this case was filed on August 3, 2015, at which time the statute of limitations had already run.

Block I, 2016 WL 3032682 at *5.

As to Manakin, Jaguar has offered evidence which shows that Manakin purchased a used vehicle which Jaguar delivered to its first owner on December 15, 2009. (Def.'s 56.1 Stmt. ¶ 22.) Plaintiffs have raised no dispute about this fact. Under this Court's prior rulings, the limitations period on an implied warranty of merchantability claim began to run on the date of delivery, December 15, 2009; an implied warranty claim cannot fall within the exception for warranties which explicitly extend to future performance. Manakin has not offered evidence from which a reasonable jury could conclude that Jaguar induced or tricked Manakin into letting the filing deadline pass. Thus, the limitation period expired four years after December 15, 2009, well before the filing of this case. Manakin's breach of implied warranty claim is barred by New Jersey's four-year statute of limitations. As to Manakin's breach of implied warranty claim, Jaguar's motion for summary judgment will be granted.

Jaguar has shown that it is entitled to judgment as a matter of law on the Fourth, Fifth, and Sixth Counts of the Third Amended Complaint. Plaintiffs bear the burden of proof of these claims at trial, and they have failed to raise material factual disputes or defeat the motion for summary judgment. Jaguar's motion for summary judgment will be granted in its entirety, and Judgment shall be entered in Jaguar's favor on the Fourth, Fifth, and Sixth Counts of the Third Amended Complaint.

This completes the resolution of all claims in this case. The pending motion for class certification will therefore be denied as moot.

s/ Stanley R. Chesler<br>STANLEY R. CHESLER, U.S.D.J.

Dated: February 22, 2022